BESSIE M. STRANG, Respondent, *v.* WESTCHESTER COUNTY NATIONAL BANK OF PEEKSKILL, NEW YORK, Appellant.

Second Department, May 14, 1920.

**Banks and banking — checks — payment of check on forged indorsement — estoppel — findings as to negligence not supported by evidence.**

Payment of a check by a bank on a forged indorsement is at the peril of the bank unless it can claim protection upon some principle of estoppel.

The plaintiff, a depositor of the defendant bank, told the cashier that she wished to draw a draft payable to a named person to whom she was to loan money on a bond and mortgage, and was advised to draw the draft to herself and then indorse it payable to the order of such person and that no one except the person to whom it was indorsed could draw the money. This was done and the plaintiff took the draft to an attorney who had agreed to place the loan on a bond and mortgage on specific property which he stated was owned by the person to whom the draft was indorsed, and he produced a bond and mortgage purporting to have been executed by the person to whom the draft was payable and his wife and advised the plaintiff that the mortgage would be recorded and at the same time delivered a certificate of title and a fire insurance policy covering the property. The fact was that the property in question belonged to the attorney and the name of the person to whom the draft was payable was fictitious and the papers were executed by the attorney and he forged the notarial certificate, the name of the indorsee to the draft, and indorsed his own name thereto and secured the money.

*Held,* that, as between the plaintiff and the attorney, the bond and mortgage were valid, and the plaintiff suffered no legal loss, for which the defendant is accountable, by reason of the payment of the draft to the attorney.

As the plaintiff represented to the bank that the one to whom the draft was indorsed was an existing person and the draft was issued and indorsed for her signature at her request so as to be payable to said fictitious person, she was bound by her representations to the defendant that the

Second Department, May, 1920. [Vol. 191.

indorsee was a genuine person, and that she was thereafter swindled by the attorney does not make the defendant liable.

The findings that the defendant did not use due and reasonable care and diligence, and that it was negligent in paying the draft are contrary to the evidence.

Rich and Putnam, JJ., dissent, with opinion.

Appeal by the defendant, the Westchester County National Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 25th day of April, 1919, upon the decision of the court rendered after a trial at the Westchester Trial Term, a jury having been discharged after motions for directed verdict.

*Mark Hyman*, for the appellant.

*P. A. Anderson*, for the respondent.

Kelly, J.:

The facts in this case are stated in the opinion of Mr. Justice Rich.

Payments by the bank upon forged indorsements are at the peril of the bank, unless it can claim protection upon some principle of estoppel. This proposition conceded by the appellant is familiar to all of us. (*Shipman* v. *Bank S. N. Y.*, 126 N. Y. 318.) The appellant argues that in the case at bar the check in question was paid to the person to whom the maker (the plaintiff) intended it should be paid; that she desired to pay the money for a bond secured by a mortgage upon certain specific property in Peekskill; that the proceeds of the check went exactly where she intended them to go and that in return she received the bond and mortgage which she had agreed to take. The appellant cites Mr. Justice Scott's opinion in *Hartford* v. *Greenwich Bank* (157 App. Div. 448; affd., on opinion below, 215 N. Y. 726). I have some difficulty in distinguishing the case at bar from the reasoning of the court in the case last cited.

Plaintiff had arranged to invest her money upon a bond secured by a mortgage on certain specified property. That property actually belonged to one Bushnell. Bushnell for his own purposes (possibly criminal, but I do not see how that affects the question) represented to plaintiff that this particular property was owned by one Homer E. Remsen.

We may assume that Remsen was a fictitious person. But Bushnell executed the bond and the mortgage on his own property, in the name of Remsen, and delivered them to the plaintiff.. True, she left the papers with him, and he did not record the mortgage, but that was a matter between her and Bushnell, not brought about by anything the bank did.

So, I take it, Bushnell would not be heard to deny the validity of the bond and mortgage. He signed it in a fictitious name, but he was in no position as against plaintiff to dispute its validity. It seems to me, the bond was the bond of the owner of the premises, and the mortgage was a lien upon the premises precisely as if Bushnell had executed it in his own name. He received the check indorsed by plaintiff to the order of Homer E. Remsen — he forged the name of Remsen, adding his own name, and received the proceeds. It seems to me there is much force in the claim that plaintiff suffered no legal loss for which the bank is accountable by reason of the payment to Bushnell.

Again, I think the plaintiff herself brought about her own loss. The defendant bank did not know Homer E. Remsen. The plaintiff personally came to the bank asserting that Homer E. Remsen was an existent person — that she had agreed to invest her money on his bond and mortgage and it was on *her* request that the check was issued and indorsed for her signature so as to be payable to Homer E. Remsen. I think that she is bound by her representation to the bank that Remsen was a genuine person. This is not a case where some third party — Bushnell, for instance — inserted a fictitious name on the check. The plaintiff did it herself deliberately. It was her own personal action which led to the making of the check payable to Remsen. With the making of the check her personal dealings with the bank ended. That she was thereafter swindled by Bushnell does not seem to me to be chargeable to the bank. Her representation to the bank at the outset seems to me the *causa causans* of the loss. (See *Jarvis* v. *Manhattan Beach Co.*, 53 Hun, 362; S. C., on subsequent appeal, 75 id., 100; affd., 148 N. Y. 652; *Manhattan Beach Co.* v. *Harned*, 27 Fed. Rep. 484.) In these cases the corporation was held to be estopped by reason of the fact that it issued ·the stock certificates in

the fictitious name, and notwithstanding the fact that the dishonest clerk thereafter transferred them by forging the fictitious name, it was held that the original representation of the company was the cause of the loss. (*New York & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30, 59; *Fifth Avenue Bank* v. *F. S. S. & G. S. F. R. R. Co.,* 137 id. 231; *Manhattan Life Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.,* 139 id. 146; *Knox* v. *Eden Musee Co.,* 148 id. 441.) Judge O'Brien in the *Jarvis* case in the Court of Appeals referred to the similarity between the rule as applied to commercial paper (148 N. Y. 659), and Mr. Justice Barrett in the General Term on the first appeal considered the rule with regard to certificates of stock as analogous with that concerning commercial paper (53 Hun, 365), as did Judge Wallace in the *Harned* case.

The judgment should be reversed and a new trial granted, with costs to abide the event. The findings that the defendant bank did not use due and reasonable care and diligence, and that said defendant was negligent in paying the draft, are reversed as contrary to the evidence.

Jenks, P. J., and Jaycox, J., concur; Rich, J., read for affirmance, with whom Putnam, J., concurs.

Rich, J. (dissenting):

Plaintiff had been a depositor in defendant's bank for several years, and on the 20th of October, 1916, had a balance to her credit in the interest department of the bank of $1,113.03. On that day she went to the bank and informed the cashier that she wished to draw a draft for $1,100, payable to Homer E. Remsen, who was to receive the money on a bond and mortgage. The defendant's cashier told her to draw the draft to her own order and to indorse on the back, "Pay to the order of Homer E. Remsen," and he told her that it would be a receipt for the money and it would be payable only to Homer E. Remsen. The cashier thereupon drew the check in that form, handed it to the plaintiff, who immediately took the draft to the lawyer through whom the loan was made, and there indorsed the same to the order of Homer E. Remsen as directed by the defendant's cashier. She thereupon delivered the draft to the lawyer and received from him a bond purporting to have been executed by Homer E. Remsen

and Alice Remsen, his wife, and was told that the mortgage would be recorded. The lawyer at the same time gave plaintiff a certificate of title to this property, signed by himself, and a fire insurance policy purporting to cover the property of Homer E. Remsen.

There was no such person as Homer E. Remsen. The lawyer deceived the plaintiff in making the application for the loan, he forged the names of Homer E. Remsen and Alice Remsen to the bond and mortgage, he forged the notary's certificate, and he forged the name of Homer E. Remsen to the draft, presented it to the bank and was paid the money, to wit, $1,100, and then killed himself. Relying upon the rule that the bank will disburse the money standing to the depositor's credit only upon his order and in conformity with his directions, and that the bank will ascertain that the indorsements upon the check are genuine, and that payments made upon forged indorsements are at its peril, unless it can claim protection upon some principle of estoppel (*Shipman* v. *Bank S. N. Y.*, 126 N. Y. 318), plaintiff seeks to recover the balance to her credit. It seems that Bushnell, the lawyer who forged the draft, was the owner of the premises, and appellant argues that the plaintiff intended that the draft should be payable to the order of the person who owned the property and executed the bond and mortgage, and that person was Bushnell, so that his indorsement was not a forgery and the defendant was not liable, that the proceeds of the draft went where she intended them to go and that in return she received the bond and mortgage. This contention is not borne out by the facts.

She thought she was investing her money upon the bond and mortgage of Homer E. Remsen and Alice Remsen and she did not receive the bond and mortgage she supposed she was purchasing. In support of its contention, however, the appellant cites, among other cases, *Hartford* v. *Greenwich Bank* (157 App. Div. 448). In that case the swindler made very elaborate preparations for defrauding his employer. He procured to be printed billheads bearing the name of James Wilson, and the address, Room 1012, Fuller Building, New York. He rented a post office box in the name of James Wilson. He opened an account in the defendant bank under

the name of James Wilson. Having thus prepared the way, the swindler proceeded to defraud the tea company into giving him a check for $1,543.50. He made out a bill upon one of his fictitious billheads purporting to show that James Wilson had sold goods to the value stated to the tea company. Thereafter in due course a check for the amount indicated was made out to James Wilson, signed and mailed. There was an actual person calling himself James Wilson, although that was not his real name, and it was that person to whom the tea company intended its check should be paid. The *Hartford* case seems to be based upon the ground that the check was made payable to the " impostor " himself. In the case at bar the plaintiff never intended that the draft should be payable to the person who obtained the money upon it. True, the payee named proved to be a fictitious person, but this was unknown to plaintiff. As was said by Mr. Justice SMITH in a well-considered opinion in *United Cigar Stores Co.* v. *Am. Raw Silk Co., Inc.* (184 App. Div. 217, 219): " The *Hartford* case, however, is a border line case and should not be extended beyond the facts thereof."

Plaintiff supposed she was loaning money to the person to whom she made the check payable; it was not indorsed by the intended payee and no title passed. (*Shipman* v. *Bank S. N. Y., supra; United Cigar Stores Co.* v. *Am. Raw Silk Co., Inc., supra.*) Homer E. Remsen was a fictitious person created by Bushnell; he never represented himself to be Remsen and the plaintiff had no knowledge that Bushnell owned the property described in the mortgage. In a word, it was the duty of the defendant to know that the indorsement upon the draft was the genuine signature of Homer E. Remsen. While the slightest inquiry would have disclosed the forgery, it was content to pay the draft, presumably relying upon the indorsement of Bushnell, and now seeks to charge plaintiff's account with the amount. This I do not think it could do. I must, therefore, vote to affirm the judgment.

PUTNAM, J., concurs.

Judgment reversed and new trial granted, with costs to abide the event.